**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**October 17, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

JESSE TRUJILLO,

      Plaintiff-Appellant,

v.

JOE WILLIAMS, Secretary; ELMER
BUSTOS, Director, New Mexico
Department of Corrections; GENE
JOHNSON, Director; L.W.
HUFFMAN, Regional Director; S.K.
YOUNG, Warden, Institutional
Classification Authority, Virginia
Department of Corrections,

      Defendants-Appellees.

No. 04-2257

---

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. CIV-04-0635 MV/WDS)**

---

Submitted on the briefs:[*]

Jesse Trujillo, filed a brief pro se.

---

Before **HENRY, McKAY** and **EBEL**, Circuit Judges.

---

    [*] After examining appellant's brief and the appellate record, this panel has
determined unanimously that oral argument would not materially assist the
determination of this appeal. See Fed. R. App. P. 34(a)(2) and 10th Cir. R.
34.1(G). The case is therefore ordered submitted without oral argument.

**EBEL**, Circuit Judge.

Plaintiff-Appellant Jesse Trujillo, a *pro se* prisoner proceeding *in forma pauperis*, filed this 42 U.S.C. § 1983 claim against various New Mexico and Virginia corrections officials[1] alleging that they violated his constitutional rights by: 1) improperly classifying and segregating him; 2) denying him access to legal materials and the courts; 3) providing him with a nutritionally inadequate diet;

---

[1] Mr. Trujillo's complaint names "Defendant Institutional Classification Authority" as a party to this suit. We liberally construe that designation as asserting claims against an unnamed Virginia official referred to by the title "Institution Classification Authority" at Wallens Ridge State Prison rather than asserting a claim against a state agency. See ANR Pipeline Co. v. Lafaver, 150 F.3d 1178, 1187 (10th Cir. 1998) ("[A] citizen's suit against a state agency is barred by the Eleventh Amendment just as surely as if the suit had named the state itself. Furthermore, it does not matter what form of relief a citizen might request in a suit against a state agency . . . .") (citing Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984)). Mr. Trujillo's complaint further suggests that he intended to sue an individual, not an agency. In the section listing the parties, he wrote:

> Defendant Institutional Classification Authority is a citizen of Virginia whose address is P.O. Box 759, Big Stone Gap, Virginia 24219. And who is imployed [sic] as the Institutional Classification Authority of Wallens Ridge State Prison, Virginia department of corrections. At the time the claims alleged in this Complaint this defendant was acting under color of state law as Classification Authority of Wallens Ride State Prison. He is legally responsible for fair and impartial recommendations of classification decision to the warden for all prisoners at Wallens Ridge State Prison.

Accordingly, we interpret Mr. Trujillo to allege claims only against officials of Virginia and New Mexico, rather than the state or a state agency.

and 4) treating him differently than other inmates. The district court *sua sponte* ordered that "Plaintiff's claims against the New Mexico Defendants are DISMISSED with prejudice; Plaintiff's claims against the Virginia Defendants are DISMISSED without prejudice," pursuant to 28 U.S.C. § 1915(e)(2) and Fed. R. Civ. P. 12(b)(6). Reviewing the district court's dismissal *de novo*, we affirm in part, reverse in part, and remand for further proceedings.

## BACKGROUND

Mr. Trujillo is a New Mexico state prisoner who was transferred by the New Mexico Department of Corrections (NMDC) to Wallens Ridge State Prison (WRSP) in Virginia on April 12, 2002. Immediately upon his arrival, WRSP held a classification hearing at which Mr. Trujillo was not permitted to present evidence, allegedly in violation of Virginia Departmental Operating Procedure 821.[2] After the hearing, WRSP placed Mr. Trujillo in segregation claiming that he was a threat to the prison. Mr. Trujillo's initial appeal to the warden was denied, but the regional director of the Virginia Department of Corrections (VDOC) determined Mr. Trujillo's subsequent grievance was founded and informed Mr. Trujillo that "appropriate administrative action ha[d] been taken."

---

[2] To the extent that Mr. Trujillo "seeks relief for alleged violations of state statutes and prison regulations . . . , he has stated no cognizable claim under § 1983," which establishes a cause of action only for deprivation of rights secured by the Constitution or federal law. Gaines v. Stenseng, 292 F.3d 1222, 1225 (10th Cir. 2002); see also Adickes v. S.H. Kress & Co., 398 U.S. 144, 150 (1970).

Mr. Trujillo's classification, however, remained the same and no new hearing was conducted.

On July 9, 2002, at a second classification hearing during which Mr. Trujillo was again not allowed to present witnesses or evidence, he was placed in segregation under the explanation that he "need[ed] a longer period of adjustment;" "New Mexico inmate." Mr. Trujillo appealed this decision on the grounds that he had been in segregation for over 100 days when the average stay for new arrivals in segregation was days or weeks; his appeal was denied by the warden and the regional director. As a result, Mr. Trujillo spent nearly a year in segregation.

On March 9, 2003, Mr. Trujillo wrote a letter to another regional director explaining that he had been classified in a prejudicial and discriminatory manner because no Virginia or other out-of-state prisoner housed at WRSP was classified in the same manner as he had been classified, nor housed in segregation for this length of time, and requested that the director intervene. According to Mr. Trujillo, the average stay in segregation for other prisoners at WRSP is less than a month, and prisoners rarely remain in segregation even for the most serious offenses for more than 180 days and usually only for sixty to ninety days. Mr. Trujillo explained to the director that he had been in segregation for more than 750 days. The letter was returned stating that his appeal to the director did not meet the criteria for a Level III response.

On March 26, 2003, WRSP changed the rationale for Mr. Trujillo's segregation to "inmate viewed as a threat to WRSP." Mr. Trujillo alleges that no further indication was given as to why he might now be viewed as a threat. And he claims that there was no marked change in his behavior to warrant such an abrupt change in the rationale for keeping him in segregation.[3]

In early May 2003, pursuant to Departmental Operating Procedure 821-7.1A, Mr. Trujillo requested an annual review of his classification to assess whether a change in his security level and treatment plan was warranted. That request was denied. In late May 2003, Mr. Trujillo filed another grievance with the VDOC, claiming that he was entitled to a classification review and should not be excluded because he was an out-of-state prisoner. In response, the WRSP warden stated: "Your initial classification was completed by New Mexico. The VDOC cannot reclassify you unless given permission by New Mexico." The regional director provided nearly the same response, stating: "Investigation

_____

[3] Liberally construed, these allegations may support a claim for retaliation against the Virginia defendants. See Fogle v. Pierson, 435 F.3d 1252, 1263-64 (10th Cir. 2006) (stating that "[p]rison officials may not retaliate against or harass an inmate because of the inmate's exercise of his constitutional rights" and noting that "[s]everal circuits have held that a prisoner's first amendment right to petition the government for redress of grievances encompasses the filing of inmate administrative appeals") (quotations, alterations omitted), petition for cert. filed, (U.S. (Apr. 4, 2006) (No. 06-6669)). However, we do not address this possible claim against the Virginia defendants because we ultimately conclude that the district court lacked personal jurisdiction over them.

reveals that you are an inmate from NMDC, therefore, the reviews are done in accordance with policies and procedures from NMCD."

In February 2004, in response to another grievance, VDOC informed Mr. Trujillo that "New Mexico has authorized the adaptation of all policies and procedures adopted by the VDOC for those inmates housed in Virginia. However, matters relating to classification are still handled by New Mexico." Following the warden's instructions, Mr. Trujillo then wrote to the secretary and the director of the NMDC requesting reclassification of his status. He never received a response.

Mr. Trujillo claims that the conditions of his confinement violated his Fourteenth Amendment due process and equal protection rights, his constitutional right of access to the courts, and his Eighth Amendment right against cruel and unusual punishment. Based on these allegations, Mr. Trujillo filed this § 1983 action in federal district court for the District of New Mexico against various Virginia and New Mexico prison officials.

## DISCUSSION

After granting Mr. Trujillo *in forma pauperis* status, the district court, pursuant to § 1915(e)(2), dismissed without prejudice Mr. Trujillo's claims against the Virginia defendants for lack of personal jurisdiction and improper venue. It also dismissed with prejudice Mr. Trujillo's claims against the New Mexico defendants under § 1915(e)(2) and Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted. We review both dismissals *de*

*novo*.  See Perkins v. Kan. Dep't of Corr., 165 F.3d 803, 806 (10th Cir. 1999) (holding that a *de novo* standard governs review of dismissals under § 1915 for failure to state a claim); Fogle, 435 F.3d at 1259 ("[W]here [a] frivolousness determination turns on an issue of law, we review the determination *de novo*.").

## I.  Claims against the Virginia defendants

The district court concluded that 1) it had no jurisdiction over the Virginia defendants because nothing in the complaint indicated any connection between the Virginia defendants and the State of New Mexico such that *in personam* jurisdiction could be properly exercised, and 2) "venue [was] improper in this district."  The court then correctly noted that, "[u]nder these circumstances, claims against the Virginia Defendants could be severed and transferred to Virginia under 28 U.S.C. § 1406(a) and Fed. R. Civ. P. 12(b)(2) & (3) . . . or dismissed."  See Doering ex rel. Barrett v. Copper Mountain, Inc., 259 F.3d 1202, 1209 n.3 (10th Cir. 2001) ("The district court had the authority either to dismiss or transfer the case for improper venue or lack of personal jurisdiction.").  The district court ordered the latter, dismissing without prejudice all of Mr. Trujillo's claims against the Virginia defendants.  We affirm the district court's jurisdictional decision but vacate and remand its decision to dismiss rather than transfer.

**A.  Section 1915 *sua sponte* dismissal**

Section 1915 contains no express authorization for a dismissal for lack of personal jurisdiction or venue.  See 28 U.S.C. § 1915.[4]  However, we have previously held that a district court may, in certain limited circumstances, properly dismiss under § 1915 based on an affirmative defense.  See Fogle, 435 F.3d at 1258; Fratus v. Deland, 49 F.3d 673, 674-75 (10th Cir. 1995).  As the Supreme Court has described:

> Section 1915(d) [the precursor to § 1915(e)] is designed largely to discourage the filing of, and waste of judicial and private resources upon, baseless lawsuits that paying litigants generally do not initiate because of the costs of bringing suit and because of the threat of sanctions for bringing vexatious suits under Federal Rule of Civil Procedure 11. To this end, the statute accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.

---

[4]  We note that there is a split of authority as to whether a court can consider such defenses in dismissing pursuant to § 1915.  Compare Sanders v. United States, 760 F.2d 869, 871 (8th Cir. 1985) (affirming dismissal under § 1915 for want of personal jurisdiction) with Anger v. Revco Drug Co., 791 F.2d 956, 958 (D.C. Cir. 1986) (per curiam) ("[W]e hold that a *pro se* complaint may not be dismissed on its face under [§ 1915] solely on the ground that the court lacks personal jurisdiction over the defendants."); Sinwell v. Shapp, 536 F.2d 15, 19 (3d Cir. 1976) (stating, in dicta, that a court cannot dismiss *sua sponte* under § 1915 on the grounds of improper venue because venue is a waivable defense); cf. Costlow v. Weeks, 790 F.2d 1486, 1487-88 (9th Cir. 1986) (allowing dismissal *sua sponte* for lack of venue before a responsive pleading had been filed); Concession Consultants, Inc. v. Mirisch, 355 F.2d 369, 371 (2d Cir. 1966) (holding that a district court, in the absence of "extraordinary circumstances," should not raise *sua sponte* the issue of improper venue).

Neitzke v. Williams, 490 U.S. 319, 327 (1989).[5]  In light of these policy

considerations, and despite the fact that lack of personal jurisdiction and venue

represent defenses that, similar to affirmative defenses, can be waived if not

properly raised, see Fed. R. Civ. P. 12(h)(1), we conclude that a district court

may, in certain limited circumstances described below, dismiss under § 1915 for

lack of personal jurisdiction and for improper venue, as well as for affirmative

defenses.

In the context of affirmative defenses, we have cautioned that *sua sponte*

dismissal on such grounds should be "reserved for those extraordinary instances

when the claim's factual backdrop clearly beckons the defense."  Fratus, 49 F.3d

at 676.  The same caution applies to *sua sponte* dismissals for lack of personal

jurisdiction and improper venue.   Accordingly, under § 1915, the district court

may consider personal jurisdiction and venue *sua sponte* "only when the defense

is obvious from the face of the complaint and no further factual record is required

to be developed."  Fratus, 49 F.3d at 674-75 (quotations, alterations omitted).

And the district court may dismiss under § 1915 only if "it is clear that [the

_____

[5]  The Prison Litigation Reform Act ("PLRA") made three pertinent
changes to section 1915(d).  First, dismissal became mandatory.  See 28 U.S.C.
§ 1915(e).  Second, it directed the court to dismiss if it "determine[d]" rather than
was "satisfied" that the case met the appropriate dismissal criteria.  See id.  Third,
it added "failure to state a claim" as a basis for dismissal.  See id.
§ 1915(e)(2)(B)(ii).

plaintiff] can allege no set of facts," Sanders, 760 F.2d at 871, to support personal

jurisdiction or venue.

**B. Personal jurisdiction over the Virginia defendants**

In determining whether a federal court has personal jurisdiction over a

defendant, the court must determine "(1) whether the applicable statute

potentially confers jurisdiction by authorizing service of process on the defendant

and (2) whether the exercise of jurisdiction comports with due process." Peay v.

Bellsouth Med. Assistance Plan, 205 F.3d 1206, 1209 (10th Cir. 2000) (quotations

omitted). Because 42 U.S.C. § 1983 does not, by itself, confer nationwide service

of process or jurisdiction upon federal district courts to adjudicate claims, Fed. R.

Civ. P. 4(k)(1)(A) refers us to the New Mexico long-arm statute,[6] which is

---

[6] New Mexico's long-arm statute provides, in pertinent part:

A. Any person, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts enumerated in this subsection thereby submits himself or his personal representative to the jurisdiction of the courts of this state as to any cause of action arising from:
      (1) the transaction of any business within this state;
      (2) the operation of a motor vehicle upon the highways of this state;
      (3) the commission of a tortious act within this state;
      (4) the contracting to insure any person, property or risk located within this state at the time of contracting;
      (5) with respect to actions for divorce, separate maintenance or annulment, the circumstance of living in the marital relationship within the state, notwithstanding subsequent departure from the state, as to all obligations arising from alimony, child support or real or personal property settlements under Chapter 40, Article

(continued...)

- 10 -

coextensive with constitutional limitations imposed by the Due Process Clause. See Tercero v. Roman Catholic Diocese, 48 P.3d 50, 54 (N.M. 2002). Thus, if jurisdiction is consistent with the Due Process Clause, then New Mexico's long-arm statute authorizes jurisdiction over a nonresident defendant.

The exercise of jurisdiction over a nonresident defendant comports with due process "'so long as there exist minimum contacts between the defendant and the forum State.'" Intercon, Inc. v. Bell Atl. Internet Solutions, Inc., 205 F.3d 1244, 1247 (10th Cir. 2000) (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291 (1980)). The minimum contacts necessary for specific personal jurisdiction may be established where "the defendant has 'purposefully directed' its activities toward the forum jurisdiction and where the underlying action is based upon activities that arise out of or relate to the defendant's contacts with the forum." In re Application to Enforce Administrative Subpoenas Duces Tecum of S.E.C. v. Knowles, 87 F.3d 413, 418 (10th Cir. 1996) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985)).[7]

---

[6](...continued)
  4 NMSA 1978 if one party to the marital relationship continues to reside in the state.

N.M. Stat. § 38-1-16 (1971).

[7] The minimum contacts standard is also satisfied, and a court may maintain general jurisdiction over a nonresident defendant, based on the
(continued...)

### 1. Minimum contacts

Mr. Trujillo was transferred from New Mexico to Virginia pursuant to the Interstate Corrections Compact (ICC),[8] which provides for the exchange of inmates between states. The ICC does not, by its terms, give personal jurisdiction to the transferring state over the receiving state's correctional officers. It also

---

[7](...continued)
defendant's "continuous and systematic" general business contacts with the forum state. Helicopteros Nacionales v. Hall, 466 U.S. 408, 415 (1984). Nothing in Mr. Trujillo's complaint demonstrates that any of the Virginia defendants were engaged in systematic and continuous activity in New Mexico, nor do we believe that he could allege facts sufficient to support such a conclusion. Accordingly, we conclude that general personal jurisdiction on that basis is lacking.

[8] The ICC has been enacted by forty states, including New Mexico and Virginia, and by the District of Columbia. See Ala. Code §§ 14-13-1 to 14-13-3; Alaska Stat. §§ 33.36.010 to 33.36.040; Ariz. Rev. Stat. Ann. §§ 31-491 to 31-492; Ark. Code Ann. §§ 12-49-101 to 12-49-103; Cal. Penal Code § 11189; Colo. Rev. Stat. §§ 24-60-1601 to 24-60-1603; Conn. Gen. Stat. §§ 18-105 to 18-107; Del. Code Ann. tit. 11, §§ 6570 to 6573; D.C. Code §§ 24-1001 to 24-1002; Fla. Stat. §§ 941.55 to 941.57; Ga. Code Ann. §§ 42-11-1 to 42-11-3; Haw. Rev. Stat. §§ 355D-1 to 355D-5; Idaho Code Ann. §§ 20-701 to 20-704; 730 Ill. Comp. Stat. 5/3-4-4; Ind. Code §§ 11-8-4-1 to 11-8-4-20; Iowa Code §§ 913.1 to 913.3; Kan. Stat. Ann. §§ 76-3001 to 76-3003; Ky. Rev. Stat. Ann. §§ 196.610, 196.620; Me. Rev. Stat. Ann. tit. 34-A, §§ 9401 to 9424; Md. Code Ann., Corr. Servs. §§ 8-601 to 8-611; Minn. Stat. §§ 241.28 to 241.30; Mo. Rev. Stat. §§ 217.525 to 217.540; Mont. Code Ann. §§ 46-19-301 to 46-19-302; Neb. Rev. Stat. §§ 29-3401 to 29-3402; Nev. Rev. Stat. §§ 215A.010 to 215A.060; N.H. Rev. Stat. Ann. §§ 622-B:1 to 622-B:3; N.J. Stat. Ann. §§ 30:7C-1 to 30:7C-12; N.M. Stat. §§ 31-5-17 to 31-5-19; N.C. Gen. Stat. §§ 148-119 to 148-121; Ohio Rev. Code Ann. § 5120.50; Okla. Stat. tit. 57, §§ 601 to 602; Or. Rev. Stat. §§ 421.245, 421.250, 421.254; 61 Pa. Cons. Stat. §§ 1061 to 1063; S.C. Code Ann. §§ 24-11-10 to 24-11-30; Tenn. Code Ann. §§ 41-23-101 to 41-23-104; Tex. Code Crim. Proc. Ann. art. 42.19; Utah Code Ann. §§ 77-28a-1 to 77-28a-5; Vt. Stat. Ann. tit. 28, §§ 1601 to 1610; Va. Code Ann. §§ 53.1-216 to 53.1-217; Wash. Rev. Code §§ 72.74.010 to 72.74.070, 72.74.900; Wis. Stat. §§ 302-25 to 302.26; Wyo. Stat. Ann. §§ 7-13-422, 7-13-423.

does not evidence contacts by any of the Virginia defendants with the State of New Mexico.[9]

The only contacts Mr. Trujillo alleged the Virginia defendants to have with New Mexico are that they received a transferred New Mexico prisoner and implemented New Mexico's classification and work authorization policies pursuant to the ICC.[10] These alleged contacts are very different from those

---

[9] "[W]e look to the substance of the pleadings and the course of the proceedings in order to determine whether the suit is for individual or official liability." Pride v. Does, 997 F.2d 712, 715 (10th Cir. 1993). Nowhere in his complaint does Mr. Trujillo allege that any Virginia defendants acting in their *personal* capacities have contacts with the State of New Mexico, nor do we believe he could allege such facts. See Ali v. District of Columbia, 278 F.3d 1, 7 (D.C. Cir. 2002) (holding that the federal district court in Washington, D.C. lacked personal jurisdiction over Virginia officials sued in their personal capacities by a D.C. inmate transferred to Virginia pursuant to the ICC). We therefore agree that personal jurisdiction has not been adequately established, and could not be established, over the Virginia defendants in their personal capacities, and we proceed to consider the allegations against the Virginia defendants in their official capacities.

[10] The fact that the Virginia officials' contact with Mr. Trujillo came about because of a contract between the State of New Mexico and the State of Virginia is not enough, on its own, to subject the Virginia defendants to suit in New Mexico. See Calder v. Jones, 465 U.S. 783, 790 (1984) ("[Employees'] contacts with [a forum] are not to be judged according to their employer's activities there. . . . Each defendant's contacts with the forum State must be assessed individually."); Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 781 n.13 (1984) ("[J]urisdiction over an employee does not automatically follow from jurisdiction over the corporation which employees him."). Similarly, the fact that the Virginia defendants may have acted as agents of the State of New Mexico pursuant to the ICC is also not sufficient, on its own, to give the New Mexico district court power to exercise personal jurisdiction. See Calder, 465 U.S. at 790; Keeton, 465 U.S. at 781 n.13; see also N.M. Stat. § 31-5-17, art. 4(A); Va. Code Ann. § 53.1-216, art. IV(a).

- 13 -

approved by the Supreme Court or this Circuit to support the exercise of specific personal jurisdiction. See, e.g., Burger King, 471 U.S. at 479-80 (concluding jurisdiction in Florida over the defendants was proper where the defendant, "deliberately reach[ed] out beyond [his home forum] and negotiated with a Florida corporation for the purchase of a long-term franchise and the manifold benefits that would derive from affiliation with a nationwide organization" and entered "a 20-year relationship that envisioned continuing and wide-reaching contacts with Burger King in Florida") (quotation omitted; emphasis added); Calder, 465 U.S. at 787 n.6, 788-90 (1983) (holding that the defendant's contacts with California were sufficient to establish minimum contacts because the allegedly libelous publication reported activities in California, most of the harm or "effects" to the plaintiff's reputation and career occurred in California, and the defendant's intentional tortious actions were "aimed at California") (emphasis added); Pro Axess, Inc. v. Orlux Distrib., Inc., 428 F.3d 1270, 1277 (10th Cir. 2005) (concluding jurisdiction in Utah over the defendants was proper, in part, because "services necessary for the contract were to be performed in Utah") (emphasis added); Far W. Capital, Inc. v. Towne, 46 F.3d 1071, 1078, 1079 (10th Cir. 1995) (indicating that there is no "per se rule that an allegation of an intentional tort [that has injured a forum resident] creates personal jurisdiction," instead "a court must undertake a particularized inquiry as to the extent to which the defendant has purposefully availed itself of the benefits of the forum's laws").

Although the Court stated in Burger King that the "fair warning requirement [of specific personal jurisdiction] is satisfied if the defendant has purposefully directed his activities at residents of the forum," 471 U.S. at 472 (quotation omitted), this oft-quoted statement does not stand for the proposition that any contact with a resident of a forum is sufficient to establish minimum contacts with that forum. Instead, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities *within the forum State*, thus invoking the benefits and protections of its laws." Id. at 475 (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)) (emphasis added); see also Shaffer v. Heitner, 433 U.S. 186, 204 (1977) ("[T]he relationship among the defendant, the forum, and the litigation [is] the central concern of the inquiry into personal jurisdiction."); Institutional Food Marketing Assocs., Ltd. v. Golden State Strawberries, Inc., 747 F.2d 448, 456 (8th Cir. 1984) ("[I]t is the defendant's contacts with the forum state that are of interest in determining whether personal jurisdiction exists, not its contacts with a resident of the forum.") (emphasis added). Thus, "[t]he constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum." Burger King, 471 U.S. at 474 (citing Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)) (emphasis added).

- 15 -

Even if the Virginia defendants in their official capacities had some responsibility for the ICC's fulfillment and operation,[11] Mr. Trujillo does not allege, nor do we believe he could allege, that the Virginia defendants took some act by which they "purposefully avail[ed] [themselves] of the privilege of conducting activities within [New Mexico]." Hanson, 357 U.S. at 253; see also Intera Corp. v. Henderson, 428 F.3d 605, 618 (6th Cir. 2005) (holding that

---

[11] The ICC provides that:

Any . . . contract [for the confinement of inmates on behalf of a sending state in institutions situated within receiving states] shall provide for:
        . . . .
(2) Payments to be made to the receiving state or to the Federal Government, by the sending state for inmate maintenance, extraordinary medical and dental expenses, and any participation in or receipt by inmates of rehabilitative or correctional services, facilities, programs or treatment not reasonably included as part of normal maintenance.
        . . . .
(4) Delivery and retaking of inmates.

(5) Such other matters as may be necessary and appropriate to fix the obligations, responsibilities and rights of the sending and receiving states.

Va. Code Ann. § 53.1-216, art. III(a)(2), (4), & (5). It further provides that:

Each receiving state shall provide regular reports to each sending state on the inmates of that sending state in institutions pursuant to this compact including a conduct record of each inmate and certify said record to the official designated by the sending state, in order that each inmate may have official review of his or her record in determining and altering the disposition of said inmate in accordance with the law which may obtain in the sending state and in order that the same may be a source of information for the sending state.

Id. art. IV(d).

- 16 -

Tennessee lacked personal jurisdiction over the defendants, because "[e]ven accepting as true [p]laintiffs' contention that the implementation of the license agreement between [them] and [the defendants' employer] required [the defendants'] officers and representatives to have 'substantial and regular' contact with [the plaintiffs], [p]laintiffs do not assert facts tending to show that [the defendants] had such contact with [the plaintiffs] in Tennessee.") (emphasis added), cert. denied, 126 S. Ct. 1782 (2006). All relevant conduct by the Virginia defendants occurred in Virginia, without any indication that their acts were either "aimed at" or "ha[d] effect in" New Mexico. Calder, 465 U.S. at 787, 789; Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1156 (9th Cir. 2006) (holding that an intentional foreign act that is both "expressly aimed at the forum state" and "caused harm, the brunt of which is suffered and which the defendant knows is likely to be suffered in the forum state" satisfies specific jurisdiction analysis) (quotation omitted). Thus, the "quantity and quality" of contacts necessary to permit the New Mexico district court to assert personal jurisdiction over the Virginia defendants in compliance with due process are not present in this case. OMI Holdings, Inc. v. Royal Ins. Co., 149 F.3d 1086, 1092 (10th Cir. 1998); see also Pro Axess, 428 F.3d at 1278 n.5. Nothing about the Virginia defendants' "conduct and connection with the forum State [of New Mexico]," if any such connection exists at all, suggests that the Virginia defendants "should reasonably [have] anticipate[d] being haled into court [in New Mexico]." World-Wide

- 17 -

Volkswagen, 444 U.S. at 297. We therefore hold that the Virginia defendants lack sufficient contacts with New Mexico to permit a New Mexico court to exercise personal jurisdiction over them.[12]

### 2. Traditional notions of fair play and substantial justice

Even assuming sufficient minimum contacts existed, we would still need to decide whether the assertion of personal jurisdiction over the Virginia defendants "comport[s] with 'fair play and substantial justice.'" Equifax Servs., Inc. v. Hitz, 905 F.2d 1355, 1359 (10th Cir. 1990) (quoting Burger King, 471 U.S. at 476); see also OMI, 149 F.3d at 1095 (concluding that the minimum contacts standard was satisfied, but holding that exercising personal jurisdiction would offend fair play and substantial justice). In determining whether a court's exercise of personal jurisdiction is "'reasonable' in light of the circumstances surrounding the case," OMI, 149 F.3d at 1091, we look to the following factors:

---

[12] Even where the "purposeful availment" requirement is established, due process is only satisfied if "the plaintiff's claim arises out of or results from actions by the defendant himself that create a substantial connection with the forum state." Pro Axess, 428 F.3d at 1277. Here, Mr. Trujillo alleges only mistreatment by individual prison employees occurring completely within the State of Virginia. Cf. Sanders, 760 F.2d at 872 (holding that "even if the transfer [of an inmate from Kentucky to Missouri] was sufficient to establish minimum contacts" between the Kentucky corrections officials and the State of Missouri, "the plaintiff's cause of action [asserting denial of medical treatment] did not arise from the act"). Mr. Trujillo thus cannot establish the second requirement of minimum contacts necessary for specific personal jurisdiction over the Virginia defendants.

(1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental social policies.

Pro Axess, 428 F.3d at 1279-80 (quotations omitted). "[T]he weaker the plaintiff's showing on minimum contacts, the less a defendant need show in terms of unreasonableness to defeat jurisdiction." Id. at 1280 (quotations and alteration omitted). Even if we got past the minimum contacts analysis, the balance of these factors in this case ultimately weighs against allowing New Mexico to exercise personal jurisdiction over the Virginia defendants.

New Mexico may have a substantial and legitimate interest in adjudicating a claim of its own prisoner. See OMI, 149 F.3d at 1096 ("States have an important interest in providing a forum in which their residents can seek redress for injuries caused by out-of-state actors."). However, Virginia has an equally strong, if not greater, interest in how its prisons are run. Additionally, Virginia has many, if not all, of the witnesses regarding prison conditions at WRSP and possibly regarding Mr. Trujillo's classification.

Furthermore, we see no particular reason to believe that due process requires Mr. Trujillo to be able to file his suit in a single forum in order to receive convenient and effective relief. To the extent that Mr. Trujillo must file separate

- 19 -

lawsuits in two forums,[13] the New Mexico defendants will be held accountable for their conduct in New Mexico, and the Virginia defendants will be held accountable for their conduct in Virginia. Cf. Garcia v. Lemaster, 439 F.3d 1215, 1217-18 (10th Cir. 2006) (holding that a New Mexico inmate housed in California pursuant to the ICC was required to bring in California his civil rights suit concerning his incarceration in California and the actions taken by prison officials in California).

In short, we conclude both that the Virginia defendants lack sufficient minimum contacts with New Mexico and that allowing a New Mexico court to exercise jurisdiction over the Virginia defendants would offend "traditional conceptions of fair play and substantial justice." Burger King, 471 U.S. at 464 (quotations, alterations omitted).[14]

---

[13] Depending on Mr. Trujillo's allegations, he might be able to bring his claims against both the New Mexico defendants and the Virginia defendants in Virginia because Virginia may have personal jurisdiction over the New Mexico defendants to the extent that the Virginia defendants acted as agents for the New Mexico defendants. See Pro Axess, 428 F.3d at 1278 (attributing actions of an agent to the principal for purposes of determining the existence of personal jurisdiction over the principal); Mitrano v. Hawes, 377 F.3d 402, 407 (4th Cir. 2004) (same) (citing Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 55 (1st Cir. 2002), and Int'l. Med. Group v. Am. Arbitration Ass'n., Inc., 312 F.3d 833, 845 (7th Cir. 2002)); Taylor v. Phelan, 912 F.2d 429, 433 (10th Cir. 1990) ("[A] principal may be subject to the jurisdiction of the court because of the activities of its agent within the forum state . . . .").

[14] Because we are affirming the district court's conclusion that New Mexico lacked personal jurisdiction over the Virginia defendants, we do not address whether the New Mexico district court was a proper venue for Mr.

(continued...)

## C.    Federal transfer statutes

A court may *sua sponte* cure jurisdictional and venue defects by transferring a suit under the federal transfer statutes, 28 U.S.C. §§ 1406(a) and 1631, when it is in the interests of justice.[15]  Although both § 1406(a) and § 1631

_____

[14](...continued)
Trujillo's claims against the Virginia defendants.

[15]  Section 1406(a) reads:

> The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

28 U.S.C. § 1406(a).  Prior to the enactment of § 1631 in October 1982, the Supreme Court, in Goldlawr, Inc. v. Heiman, 369 U.S. 463 (1962), expressly included the lack of personal jurisdiction as one of the procedural defects that can be remedied by a § 1406 transfer.  Id. at 466-67.

> Section 1631 reads in relevant part:

> Whenever a civil action is filed in a court . . . or an appeal . . . is noticed for or filed with such a court and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

28 U.S.C. § 1631.  We have held that § 1631 applies in cases where either subject matter jurisdiction or personal jurisdiction is lacking.  See, e.g., Ross v. Colo. Outward Bound Sch., Inc., 822 F.2d 1524, 1527 (10th Cir. 1987).

> Based on the mandatory language of these sections, we have determined
(continued...)

contain the word "shall," we have interpreted the phrase "if it is in the interest of justice" to grant the district court discretion in making a decision to transfer an action or instead to dismiss the action without prejudice. See United States v. Botefuhr, 309 F.3d 1263, 1274 n.8 (10th Cir. 2002). We therefore review the district court's dismissal without prejudice of Mr. Trujillo's claims against the Virginia defendants for lack of personal jurisdiction for an abuse of discretion. See Cimon v. Gaffney, 401 F.3d 1, 6 (1st Cir. 2005); Paul v. I.N.S., 348 F.3d 43, 46-47 (2d Cir. 2003); Taylor v. Social Sec. Admin., 842 F.2d 232, 233 (9th Cir. 1988); Hill v. United States Air Force, 795 F.2d 1067, 1070 (D.C. Cir. 1986).

While the court noted that it had discretion under § 1406(a) to transfer or dismiss Mr. Trujillo's claims against the Virginia defendants for lack of venue, we have directed that, after the enactment of § 1631, where the court determines that it lacks jurisdiction and the interests of justice require transfer rather than dismissal, "[t]he correct course . . . [is] to transfer the action pursuant to [§ 1631]." Ross, 822 F.2d at 1527. There is no indication that the district court actually evaluated the possibility of transferring Mr. Trujillo's claims under § 1631, and it provided no reasons for dismissing rather than transferring pursuant to § 1406(a). Where, as here, "[a] district court . . . does not exercise its discretion, or makes a decision without providing reasons, [it] abuses that

[15](...continued)
that the plaintiff need not first file a motion to transfer. See Haugh v. Booker, 210 F.3d 1147, 1150 n. 4 (10th Cir. 2000).

discretion." ARW Exploration Corp. v. Aguirre, 45 F.3d 1455, 1459 (10th Cir. 1995). Accordingly, we remand the issue to the district court for a determination of whether Mr. Trujillo's claims against the Virginia defendants should be transferred rather than dismissed without prejudice pursuant to the federal transfer statutes.[16]

## II. Claims against the New Mexico defendants

Remaining, then, are Mr. Trujillo's claims for monetary and injunctive relief against the New Mexico defendants in their official and personal capacities. Although the district court did not address the issue of sovereign immunity, § 1915 provides that "the court shall dismiss the case *at any time* if the court determines that . . . the action *or appeal* . . . seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(b)(iii) (emphasis added). We therefore address this issue before turning to the merits of Mr. Trujillo's claims against the New Mexico defendants.

### A.    Sovereign immunity

---

[16] We note that factors warranting transfer rather than dismissal, at least under § 1631, include finding that the new action would be time barred, see, e.g., Haugh, 210 F.3d at 1150; that the claims are likely to have merit, see, e.g. id.; and that the original action was filed in good faith rather than filed after "plaintiff either realized or should have realized that the forum in which he or she filed was improper," Trierweiler v. Croxton & Trench Holding Corp., 90 F.3d 1523, 1544 (10th Cir. 1996). The district court will thus need to consider these factors on remand.

In addition to seeking official capacity equitable relief, Mr. Trujillo also requests that "NMDC officials be ordered to compensate plaintiff $100 a day for every day he was held in segregation illegally without due process." "A claim for retroactive monetary reimbursement asserted against state officials," such as the New Mexico defendants, "in their official capacities constitutes a suit for monetary damages against the state" and is barred by sovereign immunity. Johns v. Stewart, 57 F.3d 1544, 1553-54 (10th Cir. 1995); see also Edelman v. Jordan, 415 U.S. 651, 663 (1974).

Congress may abrogate the states' sovereign immunity through a legitimate exercise of its Section 5 power to enforce the Fourteenth Amendment. See MCI Telecomm. Corp. v. Pub. Serv. Comm'n, 216 F.3d 929, 935 (10th Cir. 2000). However, the Supreme Court has held that § 1983 does not abrogate state sovereign immunity. Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989). Furthermore, we hold that neither Virginia nor New Mexico waived its sovereign immunity simply by adopting the ICC. See Ali, 278 F.3d at 6-7. As the D.C. Circuit noted in Ali, the only conceivable waiver language in the ICC is a provision that suggests that the compact creates rights enforceable by individual inmates: "The fact of confinement in a receiving state shall not deprive any inmate so confined of any legal rights which said inmate would have had if confined in an appropriate institution of the sending state." N.M. Stat. § 31-5-17, art. 4(E); Va. Code Ann. § 53.1-216, art. IV(e); see also Ali, 278 F.3d at 7. The

compact, however, says nothing about how such rights—assuming they exist—may be enforced. See N.M. Stat. § 31-5-17, art. 4(E); Va. Code Ann. § 53.1-216, art. IV(e); see also Ali, 278 F.3d at 7. A "reasonable construction" would "suggest that Virginia intended inmates to vindicate any rights through the traditional methods of either prospective injunctive relief . . . or damage suits against [defendants] in their personal capacities, neither of which requires waiver of sovereign immunity." Ali, 278 F.3d at 7 (citations, quotation omitted); see also Alden v. Maine, 527 U.S. 706, 732 (1999) (distinguishing between the existence of a legal right under federal law and the "implementation of the law in a manner consistent with the constitutional sovereignty of the States").

We therefore conclude that sovereign immunity bars Mr. Trujillo's claims against the New Mexico defendants to the extent that Mr. Trujillo seeks damages from these defendants in their official capacities. Accordingly, we affirm the district court's dismissal of these claims with prejudice pursuant to § 1915 on this basis.

### B. Merits of Mr. Trujillo's remaining claims against the New Mexico defendants

Remaining, then, are Mr. Trujillo's claims against the New Mexico defendants in their official capacities for injunctive relief only, and his claims against the New Mexico defendants in their personal capacities for money damages. Liberally construing Mr. Trujillo's *pro se* complaint, Price v. Philpot,

420 F.3d 1158, 1162 (10th Cir. 2005), we read it to allege against these remaining defendants 1) a Fourteenth Amendment due process and equal protection claim; 2) a denial of the constitutional right of access to the courts claim; and 3) an Eighth Amendment nutritionally inadequate diet claim. The district court determined that no relief could be granted on any of these claims and dismissed them with prejudice pursuant to § 1915(e)(2) and Fed. R. Civ. P. 12(b)(6).

A district court may dismiss under § 1915 for failure to state a claim if "it is 'patently obvious' that the plaintiff could not prevail on the facts alleged, and allowing him an opportunity to amend his complaint would be futile." Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (quotations omitted). "In determining whether dismissal is proper, we must accept the allegations of the complaint as true and we must construe those allegations, and any reasonable inferences that might be drawn from them, in the light most favorable to the plaintiff." Perkins, 165 F.3d at 806. Ultimately, we affirm in part, reverse in part, and remand.

### 1. Eighth Amendment and Fourteenth Amendment claims arising from Mr. Trujillo's classification into segregation

Mr. Trujillo claims that his classification violated his Eighth Amendment right to be free from cruel and unusual punishment and his Fourteenth Amendment right to procedural due process. The district court construed Mr. Trujillo's complaint as alleging "improper classification" and held that it failed to

state a claim for these constitutional violations because "[Mr. Trujillo] has no due process right to a particular classification."

The district court is correct that "[c]lassification of [a] plaintiff into . . . segregation does not involve deprivation of a liberty interest independently protected by the Due Process Clause." Bailey v. Shillinger, 828 F.2d 651, 652 (10th Cir. 1987) (citing Hewitt v. Helms, 459 U.S. 460, 468 (1983)). But prison conditions that "impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" *may* create a liberty interest protected by the Due Process Clause. Sandin v. Conner, 515 U.S. 472, 484 (1995); see also Talley v. Hesse, 91 F.3d 1411, 1413 (10th Cir. 1996).

Thus, we have held that a district court errs in *sua sponte* dismissing a prisoner's due process claim under § 1915 if it does not have sufficient evidence before it to "fully address both the duration and degree of the plaintiff's restrictions as compared with other inmates." See Perkins, 165 F.3d at 809; Gaines, 292 F.3d at 1225-26 (declaring it inappropriate to dismiss a prisoner's due process claim without the benefit of evidence showing that the defendant's "segregation mirrors those conditions imposed upon [other] inmates"); cf. Sandin, 515 U.S. at 486 ("Based on a comparison between inmates inside and outside disciplinary segregation, the State's actions in placing [the prisoner] there for 30 days did not work a major disruption in his environment.").

Here, the district court determined that Mr. Trujillo failed to state a due process claim despite the lack of any evidence addressing whether Mr. Trujillo's confinement was atypical and significant when compared to conditions imposed on other prisoners. Mr. Trujillo's complaint specifically alleges that he spent over 750 days in segregation and that other inmates remain in segregation for the most serious offenses for only 180 days. Where, as here, the prisoner is subjected to a lengthy period of segregation, the duration of that confinement may itself be atypical and significant. See Gaines, 292 F.3d at 1226 (directing the district court on remand to determine whether the 75-day duration of plaintiff's confinement in segregation is itself atypical and significant); Perkins, 165 F.3d at 809 (requiring the district court to have before it evidence that "fully address[es] both the *duration and degree* of plaintiff's restrictions as compared with other inmates" before it may *sua sponte* dismiss a prisoner's due process claim) (emphasis added); see also Colon v. Howard, 215 F.3d 227, 231-32 (2d Cir. 2000) (recognizing that "the duration of [segregation] is a distinct factor bearing on atypicality and must be carefully considered" and concluding that 305 days in such confinement is atypical and significant).

We therefore reverse the dismissal of Mr. Trujillo's due process claim against the New Mexico defendants and remand to allow the district court to conduct the required evidentiary analysis.[17]

### 2. Denial of constitutional right of access to the courts

Mr. Trujillo's "constitutional right of access to the courts is clearly established." See Treff v. Galetka, 74 F.3d 191, 194 (10th Cir. 1996). To state a claim for denial of such a right, Mr. Trujillo "must show that any denial or delay of access to the court prejudiced him in pursuing litigation." Id.; see also Lewis v. Casey, 518 U.S. 343, 351 (1996) (requiring that "the alleged shortcomings in the library" actually hinder a prisoner's "efforts to pursue a legal claim").

---

[17] To the extent that Mr. Trujillo also raises an Eighth Amendment claim challenging the conditions of his confinement in segregation, we conclude that "it is 'patently obvious' that [he] could not prevail on the facts alleged, and allowing him an opportunity to amend his complaint would be futile." Hall, 935 F.2d at 1110 (quotations omitted). Mr. Trujillo alleges that, as a result of his classification, he has only limited access to education, employment, religious programming, housing assignment, recreation time and equipment, the telephone, and the commissary. In addition to the fact that Mr. Trujillo has not alleged that the responsible prison officials acted with "deliberate indifference," these allegations do not demonstrate a deprivation "of the minimal measure of life's necessities," as required to state a claim upon which relief may be granted pursuant to the Eighth Amendment. Barney v. Pulsipher, 143 F.3d 1299, 1310 (10th Cir. 1998).

To the extent that Mr. Trujillo also alleges that the New Mexico prison officials violated the ICC, that claim does not constitute a violation of federal law and therefore is not actionable under § 1983. See Ghana v. Pearce, 159 F.3d 1206, 1208 (9th Cir. 1998); Stewart v. McManus, 924 F.2d 138, 142 (8th Cir. 1991).

In the context of a plaintiff serving time in an out-of-state prison system pursuant to the ICC, "the general rule imposes upon the sending state authorities the responsibility for ensuring their prisoners incarcerated in sister state facilities are afforded access to state courts." Clayton v. Tansy, 26 F.3d 980, 982 (10th Cir. 1993). Here, New Mexico as the sending state bears the "burden of providing the required state legal materials." Id.

The district court construed Mr. Trujillo's complaint as alleging only "delays in obtaining certain New Mexico legal materials from New Mexico" and dismissed his denial of access to the courts claim because "the Constitution does not ensure the access requested by Plaintiff" and because "Plaintiff does not allege any active interference with his preparation and filing of papers." See Lewis, 518 U.S. at 351 (describing that a prisoner does not have "an abstract, freestanding right to a law library or legal assistance" and therefore "cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense"). The district court misconstrued Mr. Trujillo's complaint and therefore erred in concluding that he had not stated a cognizable § 1983 claim for denial of access to the courts against the New Mexico defendants.

Mr. Trujillo actually alleges that the New Mexico defendants violated his right of access to the courts in two ways. First, as the district court noted, he complains that it takes an average of eighteen days for him to receive requested

material.  He also alleges, however, that he is expected to know exactly what he needs without any knowledge of what materials might be available to him.  This second allegation—an "exact cite" system—may state a viable claim of denial of access to the courts.  See Clayton, 26 F.3d at 982 (remanding to the trial court with instruction to determine whether the exact cite paging system resulted in a denial of the right of access to the courts).

Furthermore, Mr. Trujillo alleged a "relevant actual injury."  See Lewis, 518 U.S. at 351.  Specifically, he claims that he suffered actual injury because the defendants' actions prevented him from filing a state habeas corpus petition and from challenging the NMCD's *ex post facto* changing of his sentence.  See id. at 356 ("The tools [the guarantee of access to the courts] requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement.").

In McBride v. Deer, 240 F.3d 1287 (10th Cir. 2001), we held that conclusory allegations were insufficient because, for example, the plaintiff

> did not describe sufficiently the legal materials he was seeking, see Petrick v. Maynard, 11 F.3d 991, 995 (10th Cir. 1993) (noting that "a prisoner must do more than make a mere conclusory allegation of need for unspecified or unlimited materials"); he did not clarify that the [prison] library and its resources were inadequate for his needs, see id. (noting that the library and its resources were "inadequate" for the plaintiff's "legitimate queries"); and he did not explain that his legal claim was nonfrivolous. See Penrod v. Zavaras, 94 F.3d 1399, 1403 (10th Cir. 1996) (holding that the "[p]laintiff failed to allege that the library restrictions placed on unassigned prisoners hindered his effort to pursue a nonfrivolous legal claim").

Id. at 1290.  Unlike the plaintiff in McBride, however, Mr. Trujillo specifically alleged that he was seeking New Mexico legal materials relevant to challenge his sentence collaterally and clarified that New Mexico's exact cite system left him with inadequate materials to pursue such litigation.

Admittedly, he did not specifically explain that his legal claim was nonfrivolous—a factor that supported the court's dismissal in McBride, 240 F.3d at 1288, 1290 (failure to state a claim), and Penrod, 94 F.3d at 1402-03 (summary judgment).  But a *pro se* plaintiff, like Mr. Trujillo, "whose factual allegations are close to stating a claim but are missing some important element that may not have occurred to him, should be allowed to amend his complaint." Hall, 935 F.2d at 1110.  We therefore conclude that the district court improperly dismissed Mr. Trujillo's § 1983 denial of access to courts claim against the New Mexico defendants.

### 3.    Eighth Amendment claim for nutritionally inadequate diet

Prison officials must ensure "inmates receive the basic necessities of [nutritionally] adequate food . . . ." Barney, 143 F.3d at 1310 (citing Farmer v. Brennan, 511 U.S. 825, 832-33 (1994)); see also Thompson v. Gibson, 289 F.3d 1218, 1222 (10th Cir. 2002).  "A substantial deprivation of food may be sufficiently serious to state a conditions of confinement claim under the Eighth Amendment," Thompson, 289 F.3d at 1222, where the prison officials

- 32 -

demonstrated "deliberate indifference," Estelle v. Gamble, 429 U.S. 97, 105 (1976). See also Helling v. McKinney, 509 U.S. 25, 35 (1993).

Mr. Trujillo "may have a valid § 1983 claim; however, if he does it should be pursued against the proper defendant in a court of proper [jurisdiction and] venue." Clayton, 26 F.3d at 982. In order for liability to arise under § 1983, a defendant's direct personal responsibility for the claimed deprivation of a constitutional right must be established. See Olson v. Stotts, 9 F.3d 1475, 1477 (10th Cir. 1993) (affirming district court's dismissal where "plaintiff failed to allege personal participation of the defendants"); Coleman v. Turpen, 697 F.2d 1341, 1346 n. 7 (10th Cir. 1982) (noting defendants cannot be liable under § 1983 unless personally involved in the deprivation). Nothing in Mr. Trujillo's complaint indicates any personal participation by the New Mexico defendants in determining the amount of food Mr. Trujillo received at the Virginia prison.

To the contrary, in his complaint, Mr. Trujillo indicates that in response to his request to review his classification, VDOC informed him that "New Mexico has authorized the adaptation of all policies and procedures adopted by the VDOC for those inmates housed in Virginia," except matters relating to classification. Furthermore, even if the Virginia defendants acted as agents for the NMDC, see N.M. Stat. § 31-5-17, art. 4(A) ("[T]he receiving state [is] to act . . . solely as agent for the sending state."); Va. Code Ann. § 53.1-216, art. IV(a) (same), recovery under § 1983 against the New Mexico defendants cannot be imposed

- 33 -

vicariously on a theory of *respondeat superior*.  See Mitchell v. Maynard, 80 F.3d 1433, 1441 (10th Cir. 1996) (noting that there is no *respondeat superior* liability under § 1983).

We therefore affirm the district court's dismissal of this claim against the New Mexico defendants.

### 4.    Equal Protection claim

Mr. Trujillo also alleges that he has been denied equal protection because he has been treated differently than all other prisoners.  Specifically, he claims that NMCD informed WRSP not to allow Mr. Trujillo to work because he was a New Mexico prisoner.[18]  To the extent that Mr. Trujillo is attempting to allege an equal protection violation against the New Mexico defendants based on this instruction from NMCD, we will allow him a chance on remand to amend his allegations, which are currently insufficient to state a cognizable equal protection claim.[19]

"Equal protection is essentially a direction that all persons *similarly situated* should be treated alike." Grace United Methodist Church v. City Of

---

[18] To the extent that Mr. Trujillo also alleges that the New Mexico prison officials violated the ICC by instructing WRSP not to employ him, that claim does not constitute a violation of federal law and therefore is not actionable under § 1983.

[19] To the extent that Mr. Trujillo alleges the Virginia officials treated him differently than other out-of-state inmates transferred to Virginia or than other Virginia inmates generally by prohibiting him from working, we again note that the district court lacked jurisdiction over the Virginia defendants.

<u>Cheyenne</u>, 451 F.3d 643, 659 (10th Cir. 2006) (emphasis added; quotation omitted). Thus, on remand, Mr. Trujillo must state exactly to which group he believes he is similarly situated. For example, he must state whether <u>the New Mexico defendants</u>, by instructing WRSP not to allow Mr. Trujillo to work, treated him differently than 1) other New Mexico inmates transferred to out-of-state prisons or 2) all New Mexico inmates, such that it is the treatment of the class of transferred inmates that cannot be justified.

Either way, because Mr. Trujillo "does not claim that the defendants treated him differently because of any suspect classification," to prevail on his equal protection claim he would have to prove that "the distinction between himself and other inmates was not reasonably related to some legitimate penological purpose." <u>Templeman v. Gunter</u>, 16 F.3d 367, 371 (10th Cir. 1994). Although we note that this is a heavy burden, we believe that Mr. Trujillo deserves an opportunity to amend his complaint to allege facts sufficient to "overcome a presumption of government rationality." <u>Brown v. Zavaras</u>, 63 F.3d 967, 971 (10th Cir. 1995).

## CONCLUSION

With regard to the Virginia defendants, we AFFIRM the district court's conclusion that New Mexico lacks personal jurisdiction over the Virginia defendants and REMAND to the district court for a determination of whether Mr. Trujillo's claims against the Virginia defendants should be transferred rather than dismissed without prejudice pursuant to the federal transfer statutes. With regard

to the New Mexico defendants, we AFFIRM the district court's dismissal with prejudice of all Mr. Trujillo's money damage claims against the New Mexico defendants in their official capacities; REVERSE and REMAND the district court's dismissal of Mr. Trujillo's remaining Fourteenth Amendment due process and equal protection claims and denial of access to the courts claim; and AFFIRM the district court's dismissal with prejudice of Mr. Trujillo's Eighth Amendment claim for nutritionally inadequate diet. We GRANT Mr. Trujillo's motion to proceed on appeal *in forma pauperis*, but we remind him that he is obligated to make partial payments until the entire fee has been paid.