**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 8, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

HAROLD LOYD JOHNSON,

　　　　Plaintiff - Appellant,

v.

DAVID MILLER, Warden,

　　　　Defendant - Appellee.

No. 09-6269
(D.C. No. 5:09-CV-00263-C)
(W.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before, **BRISCOE**, Chief Circuit Judge, **TACHA** and **O'BRIEN**, Circuit Judges.

After examining the briefs and the appellate record, this panel concludes that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). This case is submitted for decision without oral argument.

---

[*] This order and judgment is an unpublished decision, not binding precedent. 10th Cir. R. 32.1(A). Citation to unpublished decisions is not prohibited. Fed. R. App. 32.1. It is appropriate as it relates to law of the case, issue preclusion and claim preclusion. Unpublished decisions may also be cited for their persuasive value. 10th Cir. R. 32.1(A). Citation to an order and judgment must be accompanied by an appropriate parenthetical notation – (unpublished). *Id.*

Harold Loyd Johnson, an Oklahoma state prisoner appearing pro se,[1] brought a 42 U.S.C. § 1983 civil rights complaint against Warden David Miller (Miller). He appeals from a summary judgment entered in favor of Miller. We affirm.

## I.    BACKGROUND

Johnson was convicted of murder in the first degree in Oklahoma state court and sentenced to life without parole.[2] He is in the custody of the Oklahoma Department of Corrections (ODOC) and incarcerated at the Lawton Correctional Facility (Lawton). Johnson's complaint alleges Miller, in his capacity as Warden of Lawton, implemented and enforced various regulations and procedures governing visitation and access to legal materials, which violated Johnson's rights under the First, Fifth and Fourteenth Amendments.

A.    Factual Background

1.    Visitation

The ODOC enacted rules, regulations, and policies governing visitation of inmates in prison facilities.[3] *See* DOC OP-030118 (8/23/2007). It directed facilities to develop security procedures and authorized the use of "physical search[es], pat searches, metal detectors, ion scan devices and canine drug detection screening" to prevent the

---

[1] We liberally construe pro se pleadings. *Ledbetter v. City of Topeka, Kan.*, 318 F.3d 1183, 1187 (10th Cir. 2003).

[2] His conviction proceedings are irrelevant to this appeal.

[3] The ODOC submitted to the district court copies of various regulations and policies which appear to have been in effect during the time period relevant to the events at issue in this case. Johnson did not object and the district court relied upon them in reaching its decision. We do the same.

introduction of contraband by visitors. (R. Vol. I at 87 (DOC OP-030118 at III(G)).) Searches and seizures conducted by local facilities must be in accord with another ODOC regulation (DOC OP-040110) entitled "Search and Seizure Standards." (*Id.* at 94.) These standards inform inmates, visitors, and employees when they can be searched and the circumstances under which various search methods may be used. "Searches will be conducted in a manner that causes the least disruption and affords respect and privacy for the property or person searched. Staff will avoid unnecessary force or embarrassment." (R. Vol. I at 95 (DOC OP-040110 at I(A)(5)).) Procedures outlined in the ODOC regulations also "identify the process for the temporary or permanent removal of visitors" or the limitation of visitation privileges.[4] (*Id.* at 85 (DOC OP-030118 at II(D)(3)(a)).) The regulations emphasize that "[v]isitation is a privilege, not a right." (*Id.* at 79 (DOC OP-030118 at 1(A)).)

Pursuant to the ODOC regulations, Miller enacted a policy at Lawton that required the use of an electronic detection machine called an IONSCAN to test all visitors, employees, and inmates "to detect the possession or use of illegal drugs." (R. Vol. I at 259 (Lawton Correctional Facility Policy # 08.016 at I(A)).) A cotton swab is rubbed over a person's skin or belongings and is then tested with the IONSCAN. If the first swab tests positive for the presence of drugs, another will be taken. If the second swab

---

[4] If visitors violate any rule or regulation (including the attempted importation or the detected use of illegal drugs) their visitation privileges may be temporarily suspended. The first violation may lead to a 90 to 180 day suspension of visitation privileges; a second violation may lead to a 180 to 365 day suspension and a third violation requires a permanent suspension of privileges.

tests positive, a third swab will be tested. If the three consecutive tests register the presence of an illegal substance, the visitor fails the scan. In that case, the Warden or his designee is immediately notified and "will make the sole determination regarding the entrance into the facility from the failed results." (*Id.* at 261.)

Johnson's mother arrived at Lawton to visit her son on March 24, 2008. She was denied entry after the IONSCAN machine detected the presence of illegal drugs, presumably on three separate swab tests. In accordance with the regulations and at Miller's discretion, her visitation privileges were temporarily suspended for 90 days as a result of the detection of drug presence. Both she and Johnson received notification of the suspension in writing on March 31, 2008. On April 1, 2008, Johnson filed a "Request to Staff" (RTS) grievance form challenging the accuracy of the IONSCAN and stating his mother should have been allowed to undergo a blood test, urine test or strip search so that she could "prove her innocence." (*Id.* at 61-62.) Johnson requested his "moms [*sic*] visitation privileges to be restored. Thank you!" (R. Vol. I at 61.)

The prison staff responded three days later saying: "Her visitation privileges will be restored after 6-24-08." (R. Vol. I at 61.) Johnson filed a second grievance which asked the prison staff to "answer the request to staff of why proper procedure was not followed." (*Id.* at 63.) Lawton staff responded the grievance form was "being returned unanswered" because the prison had already answered the RTS and informed Johnson "her privileges will be restored 6-24-08." (*Id.* at 65.)

Johnson then appealed to the Director of the ODOC, asking him "to answer . . . why proper procedure was not followed when my visitor tested positive on the

IONSCAN test." (*Id.* at 66.) Ultimately the ODOC responded: "This issue will be addressed by Warden Miller at [Lawton]." (*Id.* at 77.) By this time, his mother's visitation privileges had been restored and the record shows no further communication between Johnson and Lawton or the ODOC on the issue. After Johnson's mother's privileges were restored, she visited Lawton at least twice.

B.      Legal Research and Access to the Court

The ODOC's regulations regarding a prisoner's right to access the courts and legal materials require library staff or inmate research assistants[5] to visit prisoners in segregated units five days per week, excepting holidays. Segregated inmates can request and obtain cases or statutes from these individuals if the request provides an accurate citation and is on a particular form. The requirement of an accurate citation has led many, including the parties here, to refer to this system of obtaining legal materials as the "exact cite" system. The ODOC libraries do not provide copies of cases decided before 1976 or from courts outside the Tenth Circuit. However, such materials may be requested from legal aid organizations with the assistance of law library staff.

Johnson is incarcerated in a segregated housing unit at Lawton and depends on an inmate research assistant and the exact cite system for his legal research. On August 25, 2008, he filed a RTS arguing the exact cite system denies him "adequate access to the courts" and violates his constitutional rights; he demanded access to a law library. (*Id.* at

---

[5] Inmate research assistants are "trained . . . to assist inmates in framing legal issues, conducting research and preparing pleadings relating to conditions of confinement and post conviction relief." (R. Vol. I at 159.)

112.) Two days later, the staff responded: "Your access to courts are [*sic*] not denied." (*Id.*) Johnson appealed to the Warden asking him to stop violating Johnson's constitutional rights through "the use of the exact-site system that denies [Johnson] access to the courts . . . [and] provide [him] with a law library." (*Id.* at 114.) Miller responded: "The Law Library staff makes daily visit [*sic*] to your housing unit and are available to assist you in any legal material that you may require. Therefore you[r] access to the courts or the law library is not being denied." (*Id.* at 116.) Johnson then appealed to the ODOC. He said "according to the cases quoted in my 'Request to Staff' and 'Grievance', the exact-cite system . . . is in violation of my fundamental constitutional right of access to the courts. I don't think that courts across the United States of America are all wrong about the exact-cite system." (R. Vol. I at 121.) The ODOC denied his appeal.

## C. Procedural Background

Johnson challenged the denials of these grievances in a civil rights complaint brought pursuant to 42 U.S.C. § 1983. He first claimed Miller's use of an IONSCAN screening device to search visitors for the presence of illegal substances and the 90-day suspension of his mother's visitation privileges based on use of an IONSCAN machine violated his (and his mother's) First, Fourth, and Fourteenth Amendment rights. More specifically, he contended "proper procedures were not followed" because his mother "should [have] been allowed to have a strip search, urine, or blood test done to prove her innocence before being punished. (*Id.* at 7, 9.) He argues Miller's response ignoring his procedural argument "denied [Johnson's] due process by not allowing [him] access to the

- 6 -

grievance process . . . ." (*Id.* at 10.)

Johnson's second claim alleged the exact cite system violates his First and Fourteenth Amendment rights to access the courts. His complaint alleged he "cannot research with this exact-cite system efficiently. Some cases take days to be brought, others take weeks. None before 1976 can be ordered. I'm not allowed to read the book that comes out with recent decisions . . . ." (*Id.* at 12.)

The case was assigned to a magistrate judge who, on March 18, 2009, ordered the ODOC to file a Special Report in compliance with *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978).[6] ODOC was to file the report with its Answer to Johnson's complaint within 60 days from the date the complaint was received.

On April 21, 2009, Johnson filed a motion requesting access to a law library, a preliminary injunction limiting the use of the IONSCAN machine, as well as an investigation into and a protective order against Lawton officials. On May 14, 2009, Johnson filed a "Declaration For Entry For Default" which demanded entry of a default judgment against Miller for failure to respond to Johnson's complaint within 20 days. This was construed as a motion for relief pursuant to Fed. R. Civ. P. 55(b)(2).[7]

The magistrate considered these motions together. He first determined the ODOC

---

[6] *See Northington v. Jackson,* 973 F.2d 1518, 1521 (10th Cir. 1992) ("In this circuit we allow a court authorized report and investigation by prison officials to determine whether a pro se prisoner's allegations have any factual or legal basis. These reports are referred to as *Martinez* reports.").

[7] Rule 55(b)(2) allows entry of default judgment by the court upon application by a plaintiff.

had not been served with process until April 3, 2009, and the answer date had not yet passed. Accordingly, he issued a report recommending denial of Johnson's motion for default judgment. He also recommended the preliminary injunction be denied because Johnson had failed to show a likelihood of success on the merits and failed to allege any facts to support his request. The district court adopted these recommendations.

The ODOC then filed the *Martinez* report accompanied by Miller's Motion to Dismiss/Motion for Summary Judgment. The report stated "[Lawton] and DOC policy [had] been followed with respect to [Johnson's] visitation and access to the courts" and Johnson had not exhausted his administrative remedies relating to his visitation claim. (R. Vol. I at 55.) Miller's motion argued the complaint failed to allege a genuine issue of material fact and he was entitled to judgment as a matter of law.

The magistrate issued a supplemental report (SR&R) recommending the district court grant Miller's motion for summary judgment because Johnson had presented no evidence the IONSCAN was faulty and had not suggested any "obvious regulatory alternative that fully accommodates [his right to association] while not imposing more than *de minimis* cost" thus, his First Amendment claim must fail. (*Id.* at 309 (quoting *Overton v. United States*, 539 U.S. 126, 136 (2003)). Similarly, the magistrate recommended summary judgment on Johnson's access to the courts claim because "none of [Johnson's] allegations provide evidence of actual injury . . . as a result of the legal assistance program provided to him at [Lawton]." (*Id.* at 313.)

Johnson objected to the SR&R, claiming it was up to Miller to present evidence that the IONSCAN was reliable because the evidence was in his possession and Johnson

- 8 -

had been denied discovery. He also stated there were viable alternatives to accomplish security already located at the facility, referring to the use of drug dogs, an x-ray machine and numerous cameras in the visiting area. He claimed his access to courts had injured his abilities to litigate several cases and that case law established a violation of constitutional rights because there was no access to reference books or a satellite law library.

The district court adopted the magistrate's SR&R and entered judgment for Miller. Johnson appeals from this decision. Almost as an aside, and without any development, he also asserts the district court improperly failed to grant a default judgment against Miller or issue a preliminary injunction in his favor.

## II. DISCUSSION

"We review the grant of summary judgment de novo, applying the same standard as the district court pursuant to Rule 56(c) of the Federal Rules of Civil Procedure." *Gwinn v. Awmiller,* 354 F.3d 1211, 1215 (10th Cir. 2004). Summary judgment is only appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). "While the movant bears the burden of showing the absence of a genuine issue of material fact, the movant need not negate the nonmovant's claim." *Jenkins v. Wood,* 81 F.3d 988, 990 (10th Cir. 1996). Once the movant carries his burden, the nonmoving party must "bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." *Id.* An issue of material fact is genuine if a reasonable jury

could find in favor of the nonmovant. *Id.*

A.     First Amendment Right to Association and Fourteenth Amendment Due Process

As an initial matter, we must consider whether Johnson has standing to pursue his claims. "Standing implicates a court's jurisdiction, and requires a court itself to raise and address standing before reaching the merits of the case before it." *San Juan County, Utah v. United States*, 503 F.3d 1163, 1172 (10th Cir. 2007) (en banc) (quotations and alterations omitted). A party "must show that he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct and the injury or threat of injury must be both real and immediate, not conjectural or hypothetical." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983) (quotations omitted).

1.     Johnson's Mother's Rights

Johnson alleged numerous violations of his mother's constitutional rights. Specifically, he argued Miller: (1) unreasonably searched Johnson's mother for the presence or use of drugs with an unreliable IONSCAN machine; (2) wrongfully refused to strip search her or test her blood or urine; (3) improperly removed her visitation privileges; and (4) unlawfully failed to explain his actions when she sought to appeal the suspension of her privileges. This portion of Johnson's complaint involves alleged injuries to Johnson's mother. Thus, she is the proper party to seek relief, not he. We lack jurisdiction over those claims. *See The Wilderness Soc'y v. Kane Cty., Utah*, 581 F.3d 1198, 1209 (10th Cir. 2009) ("Absent a plaintiff with constitutional standing, federal courts lack jurisdiction."); *see also Flast v. Cohen,* 392 U.S. 83, 99 n. 20 (1968) ("[A]

general standing limitation imposed by federal courts is that a litigant will ordinarily not be permitted to assert the rights of absent third parties.").[1]

### 2.      Johnson's Rights

Johnson's civil rights complaint initially alleged a violation of his First and Fourteenth Amendment rights.  As detailed above, the district court gave his pleadings a liberal construction and explored a number of issues arguably raised therein.  The court thoughtfully and cogently analyzed alleged violations of Johnson's rights involving Miller's implementation of the applicable regulations and procedures and Miller's responses to Johnson's grievances.  On appeal, other than Johnson's claims concerning his mother, he makes no argument regarding the alleged violations of *his* First and Fourteenth Amendment rights.  Instead, he only asks that we "review all of the briefs presented concerning this issue."  (Appellant's Opening Br. at 11.)

Similarly, the entirety of Johnson's appellate argument relating to his requests for a preliminary injunction and default judgment states:

> The Preliminary Injunction should have been granted.  The Default Judgment should have been enforced against the Defendant who is a private citizen and not a [*sic*] Oklahoma, D.O.C. state employee.  There is [*sic*] a lot of things that were not considered.  I tried to protect my rights and stand up for what is right and I have suffered for trying.  Please review the whole case.

(Appellant's Br. at 17.)  Johnson makes multiple similar blanket requests that we "review

---

[1] In some instances, Congress grants a statutory right of action for a party who suffers *some* injury to bring a claim based on another's rights. *See Warth v. Seldin,* 422 U.S. 490, 501 (1975).  42 U.S.C. § 1983 creates no such right, saying only the government official "shall be liable *to the party injured* in an action at law, suit in equity, or other proper proceeding for redress."  (Emphasis added.).

- 11 -

all of the briefs presented," "see the motions and briefs for in depth discussions," or says "I believe this court knows the appropriate laws to apply.  Please review my entire case from the start to the finish of the U.S. District Court proceedings," and "[the district court] did not follow the rules about summary judgment . . . . Please review all the case and the record."  (*Id.* at 11, 13, 14, 16.)

Because Johnson is appearing pro se, we construe his filings liberally but "our role is not to act as his advocate."  *See Gallagher v. Shelton*, 587 F.3d 1063, 1067 (10th Cir. 2009).  Pro se status "does not excuse the obligation of any litigant to comply with the fundamental requirements of the Federal Rules of Civil and Appellate Procedure" and we will not make his arguments for him.[2]  *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994); *see also United States v. Rodriguez-Aguirre*, 108 F.3d 1228, 1237-38 n.8 (10th Cir. 1997) (it is not our responsibility to "'sift through' the record to find support for the claimant's arguments").  Because Johnson has failed to develop any argument on appeal regarding alleged violations of his First and Fourteenth Amendment rights, these issues are waived.  *See Bronson v. Swensen,* 500 F.3d 1099, 1104 (10th Cir. 2007) ("[W]e routinely have declined to consider arguments that are not raised, or are inadequately presented, in an appellant's opening brief."); *Fuerschbach v. Southwest Airlines Co.*, 439 F.3d 1197, 1209-10 (10th Cir. 2006) (issue waived when not developed

---

[2] We have reviewed all submitted materials thoroughly but reiterate it is Johnson's duty to provide appropriate citations to the record and set forth his arguments. *See* Fed. R. App. P. 28(a)(9)(A) (requiring "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies"); 10th Cir. R. App. P. 28.4 ("Incorporating by reference . . . is disapproved and does not satisfy the requirements of Fed. R. App. P. 28(a) . . .").

on appeal); *Artes-Roy v. City of Aspen,* 31 F.3d 958, 960 n. 1 (10th Cir. 1994) (claims and arguments not "specifically address[ed]" on appeal are deemed to be abandoned).

B.      Access to legal research and the courts

Johnson argues the exact cite system he must use for legal research "is unconstitutional and denies [him] access to the courts . . . . I cannot research with this exact cite system effeciently [*sic*] . . . . [I] never got to review all the cases and rules." (Appellant's Br. at 12.)  He contends, "[t]he denial of not being able to research current cases and not knowing what to do or what laws could help or hurt a case are injurious.  It is 'ongoing.'"  (Appellant's Br. at 13.)

A "constitutional right of access to the courts is clearly established."  *See Treff v. Galetka,* 74 F.3d 191, 194 (10th Cir. 1996).  But there is no "abstract, freestanding right to a law library or legal assistance[;] an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense."  *Lewis v. Casey*, 518 U.S. 343, 351 (1996).  A plaintiff "must show that any denial or delay of access to the court prejudiced him in pursuing litigation."  *Treff*, 74 F.3d at 194*; see also Casey,* 518 U.S. at 351 (stating "meaningful access to the courts is the touchstone . . . the inmate . . . must . . . demonstrate that the alleged shortcomings in [a law] library . . . hindered his efforts to pursue a legal claim").  Further, the inmate's legal claim must be nonfrivolous because "[d]epriving someone of a frivolous claim . . . deprives him of nothing at all . . ."  *Casey*, 518 U.S. at 353 n.3.

Two cases from our circuit provide relevant insight into our review of claims that a prisoner was denied access to the courts.  In *Trujillo v. Williams*, the plaintiff alleged a

"relevant actual injury" by arguing various prison officials wrongfully denied him access to legal materials and the courts. 465 F.3d 1210, 1226-27 (10th Cir. 2006). He specifically identified legal materials he sought, documented substantial delays caused as a result of the exact cite system, and alleged the system "prevented him from filing a state habeas corpus petition and from challenging the . . . *ex post facto* changing of his sentence." *Id.* We acknowledged Trujillo had not asserted his claims were nonfrivolous, "[b]ut a pro se plaintiff . . . whose factual allegations are close to stating a claim but are missing some important element that may not have occurred to him, should be allowed to amend his complaint." *Id*. at 1227.

In contrast, we have rejected a prisoner's conclusory allegations that a prison's law library limited his access to the courts when the prisoner "did not describe sufficiently the legal materials he was seeking; he did not clarify that the [prison's law] library and its resources were inadequate for his needs; and he did not explain that his legal claim was nonfrivolous." *McBride v. Deer*, 240 F.3d 1287, 1290 (10th Cir. 2001) (citations omitted); *see also Petrick v. Maynard,* 11 F.3d 991, 995 (10th Cir. 1993) (noting "a prisoner must do more than make a conclusory allegation of need for unspecified or unlimited materials . . .").

1.      Nonfrivolous Claim

Numerous briefs from Miller, the magistrate judge's SR&R, and the district court's opinion have all put Johnson on notice of his requirement to allege some specific instance where the exact cite system hindered the prosecution of a nonfrivolous claim. Yet Johnson has never alleged any nonfrivolous claim has been affected due to the exact-

cite system and has continuously failed to show there is an issue of material fact for trial.

Indeed, he still fails to identify a valid legal issue hindered by the exact cite system. In

his words:

> Johnson['s claims] will consist of some issues such as Newly Discovered
> Evidence, Brady Issues,[3] Ineffective Assistance of Trial and Appellant [*sic*]
> Counsel, Distruction [*sic*] of court records and Files, Perjured Testimony by
> state witnesses, Denial of Competency hearing, Prosecutorial misconduct
> and Jury issues. These are some issues that have come to light recently that
> Johnson has been wrongly convicted of First Degree Murder. Johnson
> needs to be able to do meaningful research on his criminal and civil cases
> current and future.
>
> . . . .
>
> Johnson needs to be able to do 'Research' on (A) his criminal conviction to
> prepare for his post-conviction filing and Gaining access to his Records and
> Files (B) This current 1983 Civil Rights Complaint; (c) Current Protective
> Order in Comanche County, . . . (d) Current Preparation of upcoming 1983
> Civil Rights Complaint, concerning new constitutional violations, (E)
> Research on [a separate prisoner's] Habeas Corpus petition whose deadline
> to file maybe approaching Fast.[4]

(Appellant's Br. at 6-7.) Undoubtedly, he sets forth general issues involving his criminal

conviction. Case numbers from his various past and present lawsuits are provided, but

there is no description of the specific claims involved or their basis in fact. He generally

refers us to previously filed motions and briefs for "in depth discussions on this issue."

---

[3] A "Brady issue" is legal shorthand for a claim alleging the prosecution violated its duty, in any number of ways, to disclose exculpatory evidence under *Brady v. Maryland*, 373 U.S. 83 (1963).

[4] A potential constitutional claim of another prisoner does not qualify as a nonfrivolous claim for purposes of Johnson's access to the courts. *See Cotner v. Hopkins*, 795 F.2d 900, 902 (10th Cir. 1986); *Bass v. Singletary*, 143 F.3d 1442, 1446 (11th Cir. 1998). As with claims involving harm to his mother, Johnson lacks standing to assert any challenge involving the alleged inability to conduct legal research on another prisoner's habeas claim.

- 15 -

(*Id.* at 13.) However, a review of the record shows no discussion or development regarding the validity of Johnson's claims in any other motion or brief.

Johnson's claims are unlike the prisoner in *Trujillo*, who explained the exact-cite system hampered a state habeas corpus petition challenging the "ex post facto changing of his sentence" which we recognized was a valid attempt to attack his sentence – one of the primary purposes behind the guarantee of access to the courts. 465 F.3d at 1226-27. While Trujillo had not specifically alleged his claim was nonfrivolous, we noted this was the only element lacking and, thus, allowed him to amend. *Id.* at 1227. Instead, Johnson's arguments are closer to those in *McBride*, where the prisoner failed to satisfy multiple elements including the provision of any factual allegations to support his assertions. *McBride*, 240 F.3d at 1290. Johnson has only provided vague descriptions of his claims and for this reason we are unable to conclude any are nonfrivolous.

2.     Prejudice

In *Bounds v. Smith*, the Supreme Court made it clear that prisoners have no absolute right to any particular type of legal assistance. 430 U.S. 817, 825 (1977). Under *Bounds*, the state is duty bound to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law. *Id.* at 828. Johnson cites more than ten cases from across the country which have denounced - and sometimes declared unconstitutional - various forms of the exact-cite system implemented by prisons. He asks us to examine Lawton's exact-cite system and do the same. He argues Lawton's version of the exact-cite system, particularly its failure to provide access to a satellite law

- 16 -

library, is per se unconstitutional.

We need not decide this issue today.  Because Johnson has not provided factual support to demonstrate his claims are nonfrivolous, it is unnecessary to consider whether the exact-cite system impermissibly restricts his ability to research the law in relation to those claims.  We **AFFIRM** the judgment of the district court and **DENY** as moot Johnson's pending motion for temporary preliminary injunctive relief filed with this court**.**

        **Entered by the Court:**

        **Terrence L. O'Brien**
        United States Circuit Judge